## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| **JOHN DOE 1**<br>c/o Leeseberg Tuttle<br>175 South Third Street, Penthouse One<br>Columbus, Ohio 43215 | Case No: 2:23-cv-003875 |
| Plaintiff, | District Judge _____ |
| vs. | Magistrate Judge _____ |
| **GALLIA COUNTY LOCAL SCHOOLS**<br>**BOARD OF EDUCATION**<br>4836 State Route 325<br>Patriot, Ohio 45658 | |
| and | **COMPLAINT AND JURY DEMAND** |
| **JUDE MEYERS, Individually and as**<br>**former Superintendent of Gallia County**<br>**Local Schools**<br>229 Payne Road<br>Bidwell, Ohio 45614 | |
| and | |
| **TIMOTHY RYAN EDWARDS, Individually**<br>**and as former Principal of River Valley**<br>**High School**<br>2590 State Route 141<br>Gallipolis, Ohio 45631 | |
| and | |
| **JAMES MICHAEL JACOBS, Individually**<br>**and as former Principal of River Valley**<br>**High School**<br>413 Buckthorne Drive<br>Lexington, South Carolina 29072 | |
| and | |

**OTHO EDWARD MOORE, Individually
and as former Administrator and/or
Acting Principal of River Valley High
School**
2600 Addison Pike
Gallipolis, Ohio 45631

and

**MICHAL PAIGE HUCK, Individually and
as former Teacher and Cheerleading
Coach at River Valley High School**
42B Hawthorne Lane
Bidwell, Ohio 45614

and

**MATTHEW HUCK, Individually and as
Teacher and Wrestling Coach at River
Valley High School**
1789 Addison Pike
Gallipolis, Ohio 45631

              Defendants.

## <u>INTRODUCTION</u>

This Complaint arises from the grooming and sexual abuse of Plaintiff John Doe 1 when he was a minor student at River Valley High School ("RVHS") in the Gallia County Local Schools, by Defendant Michal Paige Huck ("Paige Huck") and Defendant Matthew Huck ("Coach Huck"), who were married at the time. This Complaint also arises from the deliberate indifference to known abuse and abject failure of Gallia County Local School District employees, including Defendants Jude Meyers, Timothy Ryan Edwards, James Michael Jacobs, and Otho Edward Moore (collectively "Administrators") and the Defendant Gallia County Local Schools Board of Education (the "BOE") to properly investigate and report the abuse to law enforcement and/or Children's Services, and to take steps to prevent continued abuse of its students, including Plaintiff herein.

In 2016, Plaintiff, a high school wrestler, was groomed and sexually abused by Paige Huck. Specifically, sexual misconduct occurred on three occasions. The abuse took place with the assistance, facilitation, and knowledge of her then-husband, Coach Huck and other named Defendants. At all relevant periods of time, Coach Huck was an employee of RVHS, acting as both a teacher and wrestling coach. This sexual abuse occurred in the Hucks' home, in the Hucks' vehicle in transit to a school-sponsored athletic event, and at a school-related event held at a private gymnastics facility, Southern Ohio Gymnastics Academy ("SOGA"). Plaintiff reported these events to school personnel, including Principal Edwards in 2016, but no action was taken to stop Paige Huck from abusing other students, nor was any action taken to address the involvement of Coach Huck.

Importantly, Plaintiff was not the only student at River Valley High School who was sexually abused by Paige Huck, as will be detailed herein. In fact, Paige Huck was sexually abusing RVHS students for nearly two decades. The BOE, Coach Huck, and the Administrators had actual and constructive knowledge of Paige Huck's history of sexual misconduct with students and the risk she posed. Yet despite such knowledge, they intentionally and/or recklessly allowed and condoned her presence on campus and her interactions with students, creating an environment in which such sexual abuse could and did occur to Plaintiff and several others.

## JURISDICTION AND VENUE

1.      This Court has exclusive subject matter jurisdiction over this matter pursuant to 28 U.S.C. §1331 insofar as this Complaint raises issues under Title IX of the Education Amendments of 1972, 20 U.S.C. §1681(a) *et. seq.*, as well as the Fourth and Fourteenth Amendments of the United States Constitution.

2.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367 because the state law claims asserted by Plaintiff form part of the same case or controversy as the constitutional and federal claims.

3.     Venue is proper in the Southern District of Ohio, Eastern Division, under 18 U.S.C. §1965 and 28 U.S.C. §1391(c), as the claims arise in this district and nearly all Defendants reside or maintain a principal place of business within the district.

4.     In this civil action, it is alleged that, as a result of an omission or failure to adhere to an official policy or custom attributable to the BOE, Plaintiff suffered an invasion of his rights to bodily integrity, which are protected by the Fourth and Fourteenth Amendments to the U.S. Constitution. Plaintiff suffered deprivation of these rights during his senior year (2015-2016).

5.     Despite reports made to RVHS personnel, including but not limited to the Administrators, all of whom were authorized officials of the BOE, the aforementioned conduct was not investigated or reported to the Title IX coordinator, the Gallia County Sheriff's Department, or Gallia County Jobs and Family Services. This omission or failure to act constitutes deliberate indifference to the rights and wellbeing of Plaintiff and other students. The deprivation of Plaintiff's constitutionally protected rights is actionable under 42 U.S.C. §1983. The deliberate indifference of school officials constitutes a state-created danger actionable under 42 U.S.C. §1983.

6.     In this civil action, it is further alleged that Defendants violated Title IX of the Education Amendments of 1972, 20 U.S.C. §1681(a) *et. seq.* as Plaintiff suffered sexual abuse and harassment that was so severe, pervasive, and objectively offensive that it effectively denied Plaintiff equal access to education. Defendants had actual knowledge of such abuse, and their deficient response to these allegations amounted to deliberate indifference.

7.     All of Plaintiff's claims alleged herein are connected to and stem from childhood sexual abuse as defined by Ohio Rev. Code §2305.111 and are therefore properly asserted in this complaint.

## PARTIES

8.     PLAINTIFF JOHN DOE 1 was enrolled as a minor student at RVHS during the time of the alleged sexual abuse and deliberate indifference of school personnel. Plaintiff was a resident of Gallia County for all relevant periods of time herein. Plaintiff's date of birth is July 27, 1998, making him 25 years of age at the time of filing this Complaint.

9.     DEFENDANT GALLIA COUNTY LOCAL SCHOOL DISTRICT BOARD OF EDUCATION ("BOE") is a political subdivision of the state of Ohio with its administrative office and principal place of business located at 4836 State Route 325, Patriot, Ohio 45658 in Gallia County. The BOE receives, and at all relevant times received, federal and state funding for the provision of public education and is therefore subject to Title IX of the Educational Amendments of 1972, 20 U.S.C. §1681(a) *et. seq.*

10.     DEFENDANT TIMOTHY R. ("T.R.") EDWARDS ("Principal Edwards") was Principal at RVHS during Plaintiff's time as an RVHS student.

11.     DEFENDANT JUDE MEYERS ("Superintendent Meyers") was Superintendent at RVHS during Plaintiff's time as an RVHS student.

12.     DEFENDANT JAMES MICHAEL JACOBS ("Principal Jacobs") was Principal at RVHS during the BOE's employment of Defendants Michal Paige Huck and Matthew Huck.

13.     DEFENDANT OTHO EDWARD MOORE ("Principal Moore") was an Administrator, Acting Principal and/or Assistant Principal at RVHS during the BOE's employment of Defendants Michal Paige Huck and Matthew Huck.

14.     DEFENDANT MICHAL PAIGE HUCK ("Paige Huck") was the spouse of Defendant Matthew Huck and resident of Gallia County for all relevant periods of time herein. She is a former substitute teacher and cheerleading coach at RVHS. She is now the ex-wife of Coach Huck.

15.     DEFENDANT MATTHEW HUCK ("Coach Huck") is today and was for all relevant periods of time the vocational agriculture teacher and head wrestling coach at RVHS. Coach Huck was a resident of Gallia County for all relevant periods of time herein.

16.     The BOE, by virtue of the acts and/or omissions the Administrators, and employee Coach Huck, had actual and constructive notice, and was deliberately indifferent to the sexual abuse of RVHS students, including Plaintiff.

17.     Any and all acts or omissions alleged herein are attributable to the BOE and its staff, faculty, and/or administrators. Such acts or omissions were done in the scope of employment. All acts or omissions alleged herein are attributable to the BOE as RVHS is a school under the control of BOE.

18.     During school hours in which alleged abuse occurred, BOE had custody, control, supervision, care, and authority over Plaintiff as a minor student at RVHS.

19.     The Administrators, Coach Huck and the BOE demonstrated deliberate indifference in their failure follow BOE policy to investigate or report allegations and complaints about Paige Huck's sexual misconduct with Plaintiff and numerous others despite rumors, indications, evidence, actual complaints, and written and oral reprimands about such conduct over the course of nearly two decades.

20.     The failure of the Administrators, Coach Huck, and the BOE to investigate, prevent, and report allegations of sexual abuse and harassment by Paige Huck despite

knowledge of prior improper conduct constitutes a state-created danger and deliberate indifference to known sexual harassment and abuse.

## FACTUAL ALLEGATIONS

### Paige Huck's History

21.    Paige Huck was hired by RVHS as the freshman cheerleading advisor in 1999. She continued in various positions, including, but not limited to, junior varsity cheerleading coach, varsity cheerleading coach, and substitute teacher at RVHS until 2008.

22.    Paige Huck, at all relevant times herein, was the spouse of RVHS wrestling coach and teacher, Coach Huck. Paige Huck and Coach Huck divorced on or about January 14, 2020, after Plaintiff graduated from high school.

### Defendants' History of Ignoring the Hucks' Inappropriate Behavior

23.    Paige Huck and Coach Huck would frequently host parties, sleepovers, and "lock ins" at their private residence, which typically included members of the cheerleading squad, football team, wrestling team, and/or FFA organization.

24.    In November of 2004, the Hucks hosted a "lock in" for the RVHS cheerleaders and wrestlers at their private residence.

25.    At this "lock in", the Hucks played pornography for the students on the television in the living room.

26.    In addition, Paige Huck engaged in sexual intercourse with *numerous* male students. Male students stood in a line and took turns having sex with Paige Huck in the bedroom, while Coach Huck stood next to them and watched the sexual activity.

27.    Three cheerleaders who witnessed the above-described events, immediately reported what they saw to Principal Jacobs on the next school day. They specifically told him

about the pornography, Paige Huck having sex with students, and Coach Huck watching all of this. Principal Jacobs simply said he would "look into it."

28.     These cheerleaders were never contacted again regarding what they reported to Principal Jacobs.

29.     No investigation or report of Coach Huck and Paige Huck's misconduct was performed by Defendant BOE or its employees, in violation of Title IX of the Educational Amendments of 1972, 20 U.S.C. §1681(a) et. seq., Ohio Revised Code §2151.421, as well as BOE policy.

30.     Following this report to Principal Jacobs, the cheerleaders were harassed by multiple RVHS staff members, including Paige Huck, prompting one to quit cheerleading altogether. This fact indicates that Principal Jacobs failed to protect the identity of the witnesses who reported the inappropriate behavior, subjecting them to harassment, and discouraging any future witnesses from being honest and forthright about what they saw the Hucks doing with students.

31.     The report to Principal Jacobs is not even noted in the personnel files of Paige Huck or Coach Huck.

32.     In 2004, the Hucks hosted a gathering at their home, where minor students engaged in drinking alcohol and smoking. There were many wrestlers and football players present, in addition to the cheerleaders, most of whom were juniors and seniors.

33.     **Victim A** – then a 16-year-old student at RVHS – attended this gathering at the Huck's home, as she was on the cheerleading squad. During the gathering, **Victim A** was laying on the floor when Paige Huck and Coach Huck came and laid beside her. Coach Huck put his hand down the shirt of **Victim A**, and she froze up and pretended to be asleep. Paige Huck then asked Coach Huck "is she asleep?" Coach Huck proceeded to put his hand down the pants of

**Victim A** and began touching her vagina. **Victim A** continued to pretend to be asleep, but then got up from the encounter, crying, and headed to the bathroom.

34. **Victim A** asked a friend to take her home. During the drive, the friend told **Victim A** that the same type of assault happened to her, at the hands of the Hucks.

35. **Victim A** went to see the guidance counselor at RVHS to report that Coach Huck had touched her. The Assistant Principal at the time, Principal Moore, overheard what **Victim A** reported about Coach Huck. Principal Moore then intervened, grabbing **Victim A** by the shoulders and said, "we can talk about this later."

36. **Victim A** was never approached by anyone, including Principal Moore, to further discuss this report of sexual assault.

37. **Victim A** later learned from younger students that Coach Huck was bragging about his assault of **Victim A**.

38. Defendants took no action to investigate or report the complaint made by **Victim A.**

### Sexual Contact with Victims B, C and D

39. Paige Huck had sexual contact during the 2005-2006 school year with **Victim B**, then a 17-year-old senior wrestler at RVHS. This sexual contact happened on at least two occasions during the 2005-2006 school year, prior to **Victim B's** graduation from high school. The incidents of sexual contact occurred during an end-of-season wrestling sleepover and at a separate party (with underage students and alcohol), both held at the Huck residence. Paige Huck was employed by the BOE at the time of the sexual contact with **Victim B**, as a cheerleading coach at RVHS. Coach Huck was present at his home when **Victim B** had sex with Paige Huck, and was aware of the sexual activity between his wife and his student/wrestler, even facilitating such sexual activity in the Huck's bedroom.

40.     Paige Huck had sexual contact with **Victim C**, another wrestler who was a 13-year-old at the time that the sexual encounters began. Victim C was a middle-schooler, but was invited by Coach Huck to practice with the high school wrestling team. Sexual encounters with Paige Huck continued on several occasions between 2003-2008. Paige Huck was employed by the BOE at the time, as RVHS cheerleading coach and a substitute teacher.

41.     The first sexual contact with **Victim C** occurred when Paige Huck performed oral sex on **Victim C** (then age 13) in the Hucks' van on the way home from a wrestling meet held at another school. Coach Huck was driving the van and three other students were also in the van at the time.

42.     Sexual encounters continued through **Victim C's** high school years while he was a wrestler at RVHS. These activities occurred in the Huck residence, the Hucks' van, and often involved the use of alcohol and prescription drugs, sometimes provided by the Hucks.

43.     On another occasion, Paige Huck had sexual contact with **Victim C** and another **unidentified minor student** at the same time, at the Huck residence.

44.     **Victim C** had dozens of sexual encounters with Paige Huck through his middle school and high school experience. On several occasions, Coach Huck was home while Victim C was having sex with Paige Huck at the Huck home. On more than one occasion, Victim C saw Coach Huck watching him have sex with Paige Huck through the opening in the bedroom door.

45.     Also during the 2007-2008 school year, Paige Huck was involved in a sexual incident with another RVHS athlete, **Victim D**, while she was employed by the BOE as the RVHS cheerleading coach and a substitute teacher. **Victim D** was a 17-year-old at the time.

46.     **Victim D** frequently drove to a local bowling alley, where he met Coach Huck, who would drive **Victim D** to the Huck residence for the explicit purpose of sexual encounters with Paige Huck. These efforts were undertaken to hide the fact that **Victim D** was at the Huck

residence. Paige Huck had sex with **Victim D** at least 40 times during his high school experience. These sexual experiences happened at a wresting sleepover at RVHS, in the FFA office, in a hotel room at the FFA national convention, and on the way back from the FFA convention in the Hucks' van. Other FFA students were present in the van.

47.     Following many months of sexual activity with **Victim D**, the administration of RVHS became aware of the sexual abuse of **Victim D** and possibly others. Rather than fully and properly investigate the sexual activity, the BOE instead simply allowed Paige Huck to resign her employment. The BOE allowed this despite the prior reports of Paige Huck's sexual conduct with students, including the reports made by the three cheerleaders and, separately, by Victim A.

48.     No investigation or report of Paige Huck's misconduct was performed by Defendant BOE or its employees, in violation of Title IX of the Educational Amendments of 1972, 20 U.S.C. §1681(a) et. seq., Ohio Revised Code §2151.421, as well as BOE policy.

49.     Upon information and belief, Paige Huck's egregious misconduct was resolved in a private agreement between her and the prior RVHS administration, the terms of which resulted in her resignation and a supposed prohibition from her entering the RVHS campus.

### Paige Huck Given Access to Additional Victims

50.     Despite knowledge of Paige Huck's inappropriate actions with students, RVHS administrators did not enforce their prohibition on Paige Huck entering RVHS school grounds. On the contrary, Paige Huck continued interacting with students on RVHS grounds with the constructive and actual knowledge of RVHS administration and the BOE. Consequently, Paige Huck was given free rein to prey upon, groom, and ultimately have sexual contact with additional RVHS students from 2008 through 2019, including Plaintiff.

51.     In February 2011, following an inappropriate altercation with students at a wrestling meet, an authorized representative of the BOE limited Paige Huck's presence at RVHS to that of spectator only, and documented concerns about her questionable and inappropriate conduct.

52.     Between 2014-2016, Paige Huck was again permitted to enter the RVHS campus, where she groomed, and then initiated and maintained sexual contact with at least two additional RVHS students.

53.     A letter dated September 28, 2016 written by Superintendent Meyers to Paige Huck and signed by Principal Edwards barred Paige Huck (again) from the RVHS campus for all activities that did not directly involve her children. This letter was maintained in Paige Huck's personnel file with the BOE and referenced "deep concerns" over Paige Huck's conduct with RVHS students. The letter also notes that Superintendent Meyers had been aware of concerns within the community for several years. This letter references that it was given to Paige Huck in the presence of Superintendent Meyers, Principal Edwards and Assistant Principal Stevens on September 28, 2016. See **EXHIBIT A**, attached hereto.

54.     Paige Huck was nonetheless permitted to be present on campus thereafter, and she continued to initiate sexual contact with the Plaintiff, a senior student and minor at the time.

**Access to Victim E and Plaintiff**

55.     Paige Huck was approximately 38 years old when she started sexually abusing **Victim E**, a 15-year-old at the time, and **Plaintiff**, a 17-year-old at the time. The first sexual encounter involving all three parties together occurred in February 2016.

56.     In the fall of 2015, Paige Huck started attending wrestling practices at RVHS, despite being banned from campus. At these practices, Paige Huck would wrestle **Plaintiff** and **Victim E** and touch them inappropriately, often in front of Coach Huck and other teammates.

Additionally, Paige Huck sent nude photographs of herself to both students independently. These incidents took place on school property during the supposed ban on Paige Huck's attendance.

57.     No member of RVHS faculty, including her then-husband, Coach Huck, stopped Paige Huck from entering or maintaining a presence on RVHS campus despite the clearly documented restrictions and known reports of sexual misconduct.

58.     No school official, including her then-husband, Coach Huck, Principal Edwards or Superintendent Meyers ever asked Paige Huck to leave RVHS campus or enforced the ban on her presence despite actual or constructive knowledge of previous sexual misconduct (*i.e.* why the ban was in place).

### Sexual Abuse of Victim E and Plaintiff in 2016 - Incident 1 at Huck Home

59.     One evening, in February 2016, **Plaintiff** was at the Hucks' home with **Victim E**. **Plaintiff** was a senior on the high school wrestling team and **Victim E** was a freshman on the team. The Hucks both invited **Plaintiff** and **Victim E** to spend the night at their home, prior to travelling to a wrestling tournament the next morning.

60.     **Plaintiff, Victim E** and Paige Huck were sitting on the couch and Coach Huck was sitting in a chair in the same living room. While Coach Huck, the Hucks' (asleep) minor child, and **Plaintiff** were present in the same room, and at Paige Huck's instruction, **Victim E** began using his fingers to penetrate Paige Huck's vagina. Thereafter, Coach Huck took his minor child to bed, went to his bedroom alone, and left **Plaintiff** and **Victim E** with Paige Huck. Soon thereafter, Paige Huck started the movie, "50 Shades of Grey," a highly inappropriate erotic movie, on the television.

61.     Paige Huck proceeded to have sexual intercourse with **Plaintiff** and **Victim E**.

62.     While they were engaged in this sexual act, Coach Huck texted Paige Huck, asking what she was doing. Paige Huck responded to Coach Huck via text and said that she was "fucking one and sucking the other," to which Coach Huck responded, "That's hot. Don't get caught."

63.     After this text, **Plaintiff** learned that Coach Huck was watching the sexual intercourse between Paige Huck, **Victim E**, and **Plaintiff**, from a window on the front porch.

64.     Coach Huck coordinated and facilitated this sexual encounter at his home with his then-wife, despite being fully aware of Paige Huck's sexual misconduct with prior students, ban from school property, and a directive to keep away from students.

**Sexual Abuse of Victim E and Plaintiff in 2016 - Incident 2 in Hucks' Car**

65.     In or around February 2016, Coach Huck was driving to a district wrestling tournament, while **Plaintiff, Victim E**, and Paige Huck were in the backseat of the same vehicle. Assistant Wrestling Coach, Tyler Ward, was in the front, passenger seat sitting beside Coach Huck.

66.     With Paige Huck in the middle backseat, she stimulated with her hand **Plaintiff** and **Victim E's** genitals while they touched her vagina.

67.     Coach Huck facilitated this transportation and allowed his wife to sit in the backseat with **Plaintiff** and **Victim E** despite being fully aware of her ban from campus and order to keep away from students due to prior inappropriate sexual contact.

**Sexual Abuse of Plaintiff and Victim E in 2016 - Incident 3 at SOGA**

68.     In or around February 2016, Coach Huck held an overnight event for the FFA organization at a local gymnastics facility, SOGA, where Paige Huck was an employee.

69.     School officials, including Principal Edwards and Superintendent Meyers, were aware that Coach Huck was hosting this overnight event at SOGA, but recklessly and/or

intentionally failed to prohibit the event, supervise the event, or verify that Paige Huck would not be present.

70.     During the overnight event, Paige Huck had sexual intercourse with **Victim E** in the foam pit and performed oral sex on **Plaintiff**.

71.     Coach Huck was present at the facility and recklessly and/or intentionally failed to supervise **Plaintiff** and his teammates with full knowledge that they may be sexually abused. Coach Huck facilitated this overnight event for wrestlers despite being fully aware of Paige Huck's previous misconduct and subsequent ban from campus.

### Report of Abuse to Children Services in February 2016

72.     On or about February 29, 2016, a nude photograph of Paige Huck was discovered on **Victim E's** cell phone at school. It was reported by school officials to Gallia County Jobs and Family Services ("JFS") on March 1, 2016. However, no one from the school relayed the history of concerning behavior about Paige Huck to JFS, nor did they report that she had been instructed not to have contact with students because of similar, questionable behavior.

73.     Paige Huck claimed that she had mistakenly sent the nude photograph to **Victim E**. No investigation was completed by the Defendant BOE.

74.     The JFS report stated that Paige Huck sent nude photographs to **Victim E** and the student sent nude photos back to her via SnapChat. The report further stated that the complaint could potentially be a federal crime due to the transmission of nude images of a child and would be referred to local law enforcement. Nonetheless, there is no evidence that it was referred to local law enforcement or further investigated by the BOE or JFS.

75.     The JFS report indicated that Superintendent Meyers was made aware of the report.

76.     The JFS report indicated that **Victim E's** parents attended a meeting with school administrators on or about February 29, 2016 about the pictures that were sent and received.

77.     Soon thereafter, **Victim E's** mother had an in-person discussion with Coach Huck about the pictures sent to the student by Paige Huck and reported to JFS. Coach Huck was fully aware of the inappropriate pictures sent by his wife, and was aware of the prior sexual activity between his wife and **Victim E**. Coach Huck failed to report his knowledge of the prior sexual abuse during this discussion.

78.     Principal Edwards, Superintendent Meyers and other unknown school employees were aware of additional details of prior alleged sexual abuse of students by Paige Huck, but failed to report those details to JFS or the authorities, and failed to file or initiate a Title IX sexual assault investigation, as school policy and federal law requires.

79.     Soon after the nude photograph incident, **Plaintiff** ended his sexual contact with Paige Huck.

80.     Following **Plaintiff's** refusal to engage in further sexual activity with Paige Huck, Coach Huck began to retaliate against **Plaintiff** by violently assaulting him during wrestling practice. On more than one occasion, Coach Huck choked **Plaintiff** past the point of consciousness. Coach Huck also punched **Plaintiff** in the face, which caused bleeding at one practice. **Plaintiff** was abused in this way by Coach Huck during practices through the remainder of the wrestling season.

81.     **Plaintiff** graduated from RVHS in May 2016.

**Plaintiff's Report to School Officials in Summer 2016**

82.     On July 16, 2016, **Plaintiff** reported to RVHS Football Coach Charlie Winters ("Assistant Coach Winters") that he and Victim E had sexual contact with Paige Huck, including the details of all three incidents described above. Furthermore, **Plaintiff** reported that

Coach Huck was aware of the abuse. The details of this conversation are detailed in an August 8, 2016 letter that Assistant Coach Winters submitted to Principal Edwards.

83. On July 18, 2016, Jerrod Sparling, Head RVHS Football Coach, wrote a statement, indicating that Coach Winters informed him of a conversation he had with **Plaintiff** regarding Paige Huck's improper sexual contact with **Plaintiff** and **Victim E**.

84. Coach Sparling thereafter called **Plaintiff** to confirm. During this call, **Plaintiff** admitted to having sex with Paige Huck and also indicated that **Victim E** had sex with Paige Huck as well. Coach Sparling indicated that he reported this information to Principal Edwards.

85. Principal Edwards' July 28, 2016 notes indicate that he spoke with Coach Sparling and another student at RVHS regarding **Plaintiff's** complaint about Paige Huck and Coach Huck. At no point in his notes does it indicate any steps he planned to take or did take to address the serious allegations that **Plaintiff** and **Victim E** had sexual contact with Paige Huck, or the fact that BOE employee, Coach Huck, was aware of the inappropriate encounters.

86. Principal Edwards did not submit a report to JFS or the Gallia County Sheriff's Department which he is required to do as a mandated reported under Ohio Rev. Code §2151.421 as well as under BOE custom, practice, and policies and under Title IX of Education Amendments of 1972, 20 U.S.C. §1681(a) et. seq.

87. Principal Edwards did not initiate a Title IX investigation per BOE policy or federal law.

88. Principal Edwards relayed the allegations from Plaintiff to Superintendent Meyers, who also failed to submit a report to JFS or the Gallia County Sheriff's Department which he is required to do as a mandated reported under Ohio Rev. Code §2151.421 as well as under BOE custom, practice, and policies and under Title IX of Education Amendments of 1972, 20 U.S.C. §1681(a) et. seq.

89.     Superintendent Meyers did not initiate a Title IX investigation per BOE policy or federal law.

90.     Both Principal Edwards and Superintendent Meyers failed to report this detailed report of abuse submitted by Plaintiff despite being aware of prior allegations of abuse of students by Paige Huck, despite her ban from campus for those allegations, and despite a prior report to JFS about Victim E receiving nude pictures of Paige Huck just months earlier.

**Victim E Sexually Abused for Three More Years (2016-2019)**

91.     Paige Huck continued the sexual abuse of **Victim E**, primarily at the Hucks' residence, for a period of three more years. Other encounters took place when **Victim E** stayed overnight with Paige Huck and Coach Huck in hotels at out-of-town wrestling tournaments and in the back seat of vehicles driven by Coach Huck.

92.     For example, in March of 2017, Paige Huck, Coach Huck, **Victim E** and Tyler Ward (assistant wrestling coach at the time) all shared a room in Youngstown, Ohio, while there for a junior wrestling tournament. During the middle of the night, with Coach Huck in the hotel room, Paige Huck proceeded to have sexual intercourse with **Victim E** on the floor of the hotel room, between the beds.

93.     This, and other acts of sexual abuse of **Victim E** occurred at least 20 times *after* Plaintiff reported to RVHS administrators the sexual abuse of himself and **Victim E** by Paige Huck in July 2016.

**"Permanent Ban" of Paige Huck From Campus Three Years Later (2019)**

94.     Paige Huck was –again– "banned" from the RVHS campus three years after Plaintiff's report of abuse. A letter dated March 19, 2019 references a meeting between Paige Huck, Coach Huck, Principal Edwards and Superintendent Meyers to discuss Paige Huck's

ongoing inappropriate sexual behavior with RVHS students. This meeting resulted in Paige Huck being "permanently banned" from RVHS campus. See **EXHIBIT B**, attached hereto.

95.     Despite the foregoing, Coach Huck continued in his employment as a teacher and as Head Wrestling coach at RVHS. Paige Huck, although no longer employed by the BOE, continued to be present on school property and had ongoing access to RVHS students, particularly high school wrestlers at wrestling-related events and extracurricular activities.

**BOE Failures**

96.     The BOE published, in relevant part, the following Title IX Policy in its handbook:

   a.  "The Board has created informal and formal discrimination and harassment grievance procedures, providing for a prompt and equitable investigation and resolution of complaints of sex discrimination, including sexual misconduct."

   b.  "District employees are required to report these incidents to the Title IX Coordinator upon becoming aware of an incident, and failure to do so may result in disciplinary action."

   c.  **Definition of Sexual Harassment**: Unwelcome sexual advances, requests for sexual favors or other verbal, nonverbal, or physical conduct of a sexual nature may constitute sexual harassment when…
       i.  such conduct is sufficiently severe, persistent, or pervasive and has the purpose or effect of unreasonably interfering with an individual's work or educational performance by creating an intimidating, hostile or abusive environment, or by interfering with one's ability to participate in or benefit from a class or educational program or activity.

   d.  **"Sexual harassment** includes gender-based harassment, which refers to unwelcome conduct based on an individual's actual or perceived sex… Examples of sexual harassment-type conduct may include, but are not limited to, unwanted sexual advances… grooming; repeated sexual jokes, flirtations, advances or propositions;… graphic verbal commentary relating to… sexual prowess; coerced sexual activities; any unwanted physical contact; sexually suggestive or obscene comments or gestures; or displays in the workplace of sexually suggestive or obscene objects or pictures… All of these types of harassment are considered forms of sex discrimination prohibited by Title IX."

97.     As detailed in preceding paragraphs, Coach Huck's and Paige Huck's conduct, dating back to 2004, included sexual advances, grooming, flirtations, propositions, graphic

sexual commentary, gestures, and photographs, all of which constitute forms of sexual

harassment as defined by Title IX and BOE policy.

98.     The Administrators never reported any complaints of sexual harassment,

including Plaintiff's, to the Title IX coordinator as required by BOE Policy. The BOE Policy

Handbook also published, in relevant part:

> e.    "All employees of the District who know or have reasonable cause to suspect that
> a child under 18 years of age or a disabled child under 21 years of age has suffered,
> is suffering or faces a threat of suffering any type of abuse or neglect are required
> to immediately report such information to the public children services agency or
> the local law enforcement agency… To ensure prompt reports, procedures for
> reporting are made known to the school staff… The Board directs the
> Superintendent/designee to develop a program of in-service training in child
> abuse prevention; violence; school safety… Training is also provided on the
> Board's harassment, intimidation, or bullying policy."

99.     Plaintiff trusted that BOE and the Administrators would comply with all

applicable state and federal laws as well as custom, policy, and practice in their own handbook

that exist to keep students safe, especially from sexual abuse, assault, and harassment.

100.    BOE, by and through its authorized officials, including the Administrators and

other RVHS personnel, failed to report numerous complaints of sexual abuse and harassment,

including Plaintiff's complaint, to the public children services agency or the local law

enforcement agency.

101.    The BOE failed to disclose Paige Huck's prior sexual abuse of a minor and failed

to enforce the ban on her presence at RVHS campus. Such omissions and failures rendered

other students, including Plaintiff, more vulnerable to the same sexual abuse suffered by the

victims of which they were aware and had prior knowledge.

102.    The BOE had knowledge of Paige Huck's prior sexual misconduct with minor

students at RVHS for at least twelve (12) years before the sexual abuse, assault, and

manipulation of Plaintiff began.

103. The BOE failed Plaintiff and other victims not named in this lawsuit in an unimaginable way. The BOE allowed a perverse, abusive, predatory, and unsafe environment to exist in RVHS for a decade or longer, despite actual knowledge, well-circulated rumors, and specific complaints and reprimands about Paige Huck's sexual misconduct.

### Plaintiff's Damages

104. As a result of the events alleged herein, Plaintiff was denied an equal educational opportunity and freedom from sexual and physical abuse due to the hostile environment created by the Defendants. The sexual abuse and harassment alleged herein was so severe, persistent, and pervasive that it unreasonably interfered with Plaintiff's ability to participate and benefit fully from the educational and extracurricular program at RVHS.

105. Plaintiff was traumatized by the sexual abuse. Plaintiff has suffered and continues to suffer from anxiety, sleep disturbances, mood disturbances, emotional trauma, humiliation, guilt, embarrassment, and anger for several years as a result of the lasting damage caused by the events alleged herein. Such trauma will affect him emotionally and psychologically for the rest of his life.

106. Plaintiff has been diagnosed with adjustment disorder and anxiety as a result of the sexual abuse he suffered.

107. Plaintiff served in the United States Army and was previously employed as a military police officer, stationed at Fort Knox, Kentucky. Plaintiff's service and employment were negatively affected by the abuse that he endured.

## CLAIMS FOR RELIEF

### Count I – Violation of Bodily Integrity Under the Fourth and Fourteenth Amendments to the U.S. Constitution, *via* 42 U.S.C. §1983
### (All Defendants)

108.     Plaintiff incorporates by reference each of the preceding paragraphs as if fully set forth herein.

109.     At all times relevant herein Plaintiff had a right to bodily integrity which is protected by the Fourth and Fourteenth Amendments to the United States Constitution. Such rights were violated by the actions of all Defendants.

110.     Defendants are state actors and were acting under color of state law.

111.     The Defendant BOE, by and through its authorized officials, including, but not limited to its superintendent, principal(s), teacher(s), and coach(s), failed to adhere to its official district policies. Specifically, there was a failure to conduct a prompt and equitable investigation and resolution of reports made of sexual abuse, harassment, and grooming, dating back to 2004, well before Plaintiff became an RVHS student.

112.     Further, there was a failure of Defendants to report known or suspected sexual abuse, harassment, and grooming to the public children services agency or the local law enforcement agency, dating back to 2004, well before Plaintiff became an RVHS student.

113.     The sexual harassment, abuse, and grooming committed by Paige Huck and Coach Huck occurred, in part, on the RVHS campus. Furthermore, Defendant BOE, by and through its authorized officials, was made aware of the alleged sexual abuse by the Hucks, including by numerous complaints, as well as by Plaintiff when he complained to an RVHS coach and Principal Edwards about the abuse.

114.     The BOE's failure to adhere to its own policy constituted an omission that manifests deliberate indifference to the rights of students, including Plaintiff, as well as other

minor students as detailed in this complaint. The BOE's omission of these district policies, in part, proximately caused the deprivation of and infringement upon Plaintiff's constitutional rights.

115. The Defendant BOE had an affirmative duty to protect its students from harm when there existed a state-created danger; a violation of this duty under these circumstances is actionable under 42 U.S.C. §1983.

116. The harm Plaintiff suffered as a result of the sexual abuse and harassment by Paige Huck and Coach Huck was both known and foreseeable, as Defendants were aware of prior reports and had prior knowledge that Paige Huck had previously engaged in inappropriate sexual behavior with male students, particularly wrestlers, at RVHS, with the knowledge and involvement of Coach Huck. Plaintiff's harm was direct in that Paige Huck sexually abused Plaintiff in the same manner, with the awareness and assistance of Coach Huck.

117. The Defendants' knowledge of the potential danger to RVHS students and the failure to put measures in place to prevent such harm shocks the conscience as they were aware of such conduct for more than twelve (12) years before Plaintiff's sexual abuse occurred. It is beyond the bounds of basic humanity to continually put minor students in a position in which they were aware that sexual abuse could and did occur – and do nothing to stop it.

118. As a minor student and male wrestler at RVHS when the abuse occurred, Plaintiff was patently subject to and vulnerable to the potential harm brought about by the Defendant BOE's failure to prevent Paige Huck's presence on RVHS campus given their knowledge of her history of sexual abuse. Such deliberate indifference and a failure to prevent Paige Huck's presence on RVHS campus rendered Plaintiff more vulnerable to the danger of sexual abuse.

119.     As a proximate result of Defendants' deliberate indifference to school policy as detailed above, Plaintiff suffered a violation of his constitutionally-protected rights. In turn, the omission by the Defendant BOE proximately caused Plaintiff significant emotional and psychological trauma, which is actionable under 42 U.S.C. §1983.

120.     Additionally, the Defendant BOE condoned and ratified the above-alleged violations through its deliberate indifference to its own policy, and through the involvement of its employee, Coach Huck, which proximately caused Plaintiff's emotional and psychological injuries.

121.     As a result of the deprivation of Plaintiff's constitutional rights, Plaintiff suffered and continues to suffer severe emotional distress and trauma.

122.     As a result of the deprivation of Plaintiff's constitutional rights and resulting emotional and psychological trauma, Plaintiff is seeking special damages in an amount to be proven at trial.

123.     Pursuant to 42 U.S.C. §1988, Plaintiff is entitled to recover all reasonable attorney's fees and costs expended in this action.

## <u>Count II - Violation of Title IX of the Educational Amendments</u>
### (Defendant BOE)

124.     Plaintiff incorporates by reference each of the preceding paragraphs as if fully set forth herein.

125.     Title IX of the Education Amendments of 1972, 20 U.S.C. §1681(a)("Title IX"), states that, "no person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance…"

126.     Title IX is effectuated through the 34 Code of Federal Regulations, Part 106. 34 C.F.R. § 106.4(a) provides:

> Every application for Federal financial assistance shall as condition of its approval contain or be accompanied by an assurance from the applicant or recipient, satisfactory to the Assistant Secretary, that the education program or activity operated by the applicant or recipient and to which this part applies will be operated in compliance with this part.

127. At all relevant times, the Defendant BOE received federal financial assistance and, based on 34 C.F.R. § 106.4(a), was therefore subject to and required to comply with Title IX.

128. Sexual harassment is unwelcome conduct of a sexual nature. It includes unwelcome sexual advances, requests for sexual favors, and other verbal, nonverbal, or physical conduct of a sexual nature.

129. The sexual abuse and harassment of Plaintiff by Paige Huck and Coach Huck, which included sexual intercourse, sexual activities, sexual advances, sexual imposition, inappropriate touching, sexual propositions, graphic commentary, sexually suggestive and obscene comments, meets the definition of sexual harassment under Title IX, as well as under the BOE's policy.

130. Coach Huck's deliberate indifference to, and/or grooming of Plaintiff for the sexual exploitation by his then-wife, Paige Huck meets the definition of sexual harassment under Title IX, as well as under Defendant BOE's policy.

131. The sexual abuse, harassment, and grooming suffered by Plaintiff created a hostile environment in which Plaintiff did not feel safe in school or at school-related events, which constitutes sexual discrimination in violation of Title IX.

132. The Administrators and the BOE were required to investigate, report, and properly address complaints against Paige Huck and Coach Huck, including Plaintiff's complaint, per Title IX and BOE policy.

133. All Defendants failed to report allegations of abuse to the Title IX coordinator and as such, none of the policies in place to investigate, determine disciplinary measures, and

protective measures for the victim were ever utilized, which constitutes a failure to comply with both Title IX and BOE policy, and is therefore a violation of Title IX.

134.    Defendant BOE had actual and constructive knowledge of significant concerns about Paige Huck and Coach Huck's inappropriate conduct with RVHS students based on prior reports of abuse dating back to 2004, as well as personnel documentation dated on or about February 12, 2011, February 29, 2016, July 28, 2016, August 8, 2016, August 11, 2016, September 28, 2016 and March 19, 2019 that expressed and reiterated such concerns.

135.    The Administrators, and through its agency, Defendant BOE, had actual knowledge of the allegations of sexual abuse, harassment, and grooming by Paige Huck and Coach Huck, based on numerous prior complaints and the report to JFS in 2016 relating to Plaintiff.

136.    Upon information and belief, following Plaintiff's oral and written complaints alleging sexual abuse to RVHS personnel, including Principal Edwards, Coach Huck was not interviewed or questioned by administrators about his involvement and knowledge.

137.    Defendants BOE and the Administrators, by their acts and omissions, acted with deliberate indifference by so deficiently responding to allegations of sexual harassment in a manner that was "clearly unreasonable in light of the known circumstances."

138.    The conduct suffered by Plaintiff at the hands of Defendants was so severe, pervasive, and objectively offensive that it effectively denied him equal access to educational programming.

139.    The sexual abuse, harassment, and grooming suffered by Plaintiff created a hostile environment that was so severe, pervasive, and objectively offensive that it denied him equal access to the benefits and opportunities of his educational programming, including, but not limited to safe participation in athletics unmarred by abuse and harassment.

140. As a direct and proximate result of Defendants' collective violations of Plaintiff's Title IX rights, Plaintiff has suffered and continues to suffer immense emotional, psychological, and mental trauma, embarrassment, depression, guilt, and shame. As a result, Plaintiff has also sustained injuries and damages, including, but not limited to, economic loss; educational loss; medical and pharmaceutical costs; lost and/or diminished wages, damage to his good name; and loss of the ordinary pleasures of everyday life.

141. Plaintiff is entitled to damages for the emotional and psychological harm detailed in the preceding paragraphs, including attorney fees.

**Count III – Violation of Title IX – Heightened Risk of Sexual Harassment**
**(Defendant BOE)**

142. Plaintiff incorporates by reference each of the preceding paragraphs as if fully set forth herein.

143. This action is brought pursuant to Title IX of the Educational Amendments of 1972, 20 U.S.C. §1681, et seq.

144. In *Doe v. Metro. Gov't & Davidson Cty.*, 35 F.4th 459 (6th Cir. 2022), the Court of Appeals for the Sixth Circuit adopted the Ninth Circuit test for Title IX pre-assault claims, which provides: "A student must show: 1) the school maintained a policy of deliberate indifference to reports of sexual misconduct, 2) which created a heightened risk of sexual harassment that was known or obvious, 3) in a context subject to the school's control and 4) as a result the plaintiff suffered harassment that was 'so severe, pervasive and objectively offensive that it can be said to have deprived the plaintiff of access to the educational opportunities or benefits provided by the school.'" *Id.* at 465 (*citing Karasek v. Regents of the Univ. of Cal.*, 956 F.3d 1093, 1112 (9th Cir. 2020)).

145. The Court further held that, when alleging post-assault claims, K-12 students need not prove that further harassment must be inflicted against the same victim. Instead, the

*Doe* Court held that the "same victim" requirement from *Kollaritsch*–which involved a

university–did not apply in the K-12 context because K-12 schools have more authority and

control over students than at the university level. *Id.* at 468.

146.    Here, Plaintiff was subjected to sex-based abuse and harassment committed by

Paige Huck and facilitated by Coach Huck.

147.    The Administrators, and through its agency, Defendant BOE, had actual

knowledge of the allegations of sexual abuse, harassment, and grooming by Paige Huck and

Coach Huck, based on numerous prior complaints, extensive documentation of misconduct, as

well as from the report to JFS in 2016.

148.    Defendants, including the BOE and Administrators, demonstrated a policy of

deliberate indifference to multiple reports of sexual harassment perpetrated by Paige Huck and

Coach Huck as outlined previously in this complaint, failing to timely investigate and respond

to the harassment of several prior students and of Plaintiff, failing to adequately train and

supervise their staff with respect to the handling of Title IX complaints, and failing to take

immediate, effective remedial steps to resolve Plaintiff's complaint of sexual harassment, and

instead acted with deliberate indifference to Plaintiff's allegations.

149.    Defendants' policy of deliberate indifference created a heightened risk of sexual

harassment to Plaintiff that was known or obvious.

150.    Defendants' policy of deliberate indifference caused Plaintiff to experience sexual

harassment and assault.

151.    Plaintiff suffered harassment that was so severe, pervasive and objectively

offensive that it can be said to have deprived the Plaintiff of access to the educational

opportunities or benefits provided by the school.

152. As a direct and proximate result of the Defendants' wrongful acts and omissions, Plaintiff has sustained injuries and damages, including, but not limited to, economic loss; educational loss; medical and pharmaceutical costs; mental and emotional distress, including anxiety, mental anguish, humiliation, embarrassment; damage to his good name; and loss of the ordinary pleasures of everyday life.

### Count IV – Violation of the Standard in *Monell v. Dept. of Social Services* via 42 U.S.C. Section 1983
**(Defendant BOE)**

153. Plaintiff incorporates by reference each of the preceding paragraphs as if fully set forth herein.

154. The actions of the Defendant BOE, in failing to properly supervise and train its officials, coaches and administrators in proper methods of recognizing, responding to and preventing harassment and retaliation, and in permitting ongoing harassment and failing to supervise Paige Huck and Coach Huck, constitute a violation of the BOE's obligations to maintain lawful policies and procedures pursuant to *Monell v. Dept. of Social Services*, 436 U.S. 658 (1978).

155. Reasonable persons in the Defendant's position would have concluded that maintaining such policies, practices and procedures that allowed and/or perpetuated the harassment of students by its employees was unconstitutional.

156. As a direct result of the actions and conduct of Defendant BOE, Plaintiff suffered and continues to suffer extreme emotional pain and suffering, lost wages, medical and prescription costs, a loss of educational opportunities and a loss of meaningful associations.

### Count V – Childhood Sexual Assault and Battery Under Ohio Rev. Code §2305.111
**(Paige Huck and Coach Huck)**

157. Plaintiff incorporates by reference each of the preceding paragraphs as if fully set forth herein.

158.     At all times relevant herein, Coach Huck was employed by Defendant BOE as a teacher and wrestling coach, Paige Huck was then the spouse of Coach Huck, and Plaintiff was a minor child enrolled at RVHS and wrestler under the control of Coach Huck.

159.     Paige Huck and Coach Huck groomed Plaintiff for sexual exploitation and later sexual abuse while Plaintiff was enrolled at RVHS and a member of the wrestling team.

160.     Paige Huck engaged in sexual conduct with Plaintiff by coercing him in a manner that prevented resistance by a person in Plaintiff's position as a minor, subject to her control and that of Coach Huck, her husband.

161.     Paige Huck intentionally engaged in sexual conduct with Plaintiff, a minor, when she had temporary disciplinary control over Plaintiff, in violation of Ohio Rev. Code §2907.03(A)(1) and (9) (Sexual Battery).

162.     Paige Huck had intentional sexual contact with Plaintiff, a minor, knowing that it was reckless, in violation of Ohio Rev. Code §2907.06(A)(1)(Sexual Imposition).

163.     Coach Huck solicited, enabled, encouraged, and endorsed the sexual conduct between Plaintiff and Paige Huck, thereby abusing his position of authority over Plaintiff, in violation of Ohio Rev. Code §2907.06 (Sexual Imposition).

164.     The actions of Paige Huck and Coach Huck constituted child sexual abuse as Plaintiff was under 18 years old at the time of the abuse, which is actionable under Ohio Rev. Code §2305.111.

165.     All of Plaintiff's claims alleged herein are connected to and stem from childhood sexual abuse as defined by Ohio Rev. Code §2305.111 and are therefore properly asserted in this complaint.

## Count VI – Damages for Criminal Act under Ohio Rev. Code §2307.60
### (Paige Huck, Coach Huck, the Administrators)

166.     Plaintiff incorporates by reference each of the preceding paragraphs as if fully set forth herein.

167.     Plaintiff has a cause of action under Ohio law for damages stemming from Defendants' criminal acts.

168.     Page Huck committed sexual battery and sexual imposition of Plaintiff, and other criminal acts, on multiple occasions. Sexual battery and sexual imposition are crimes under Ohio law, pursuant to Ohio Rev. Code §§2907.03 and 2907.06, respectively.

169.     Coach Huck committed sexual imposition of Plaintiff, and other criminal acts, on multiple occasions. Sexual imposition is a crime under Ohio law, pursuant to Ohio Rev. Code §2907.06.

170.     Paige Huck and Coach Huck each engaged in conduct that constituted child sexual abuse as Plaintiff was under 18 years old at the time of the abuse, which is actionable under Ohio Rev. Code §2305.111.

171.     Coach Huck and the Administrators also committed criminal acts under Ohio Rev. Code §2151.421, by failing to report alleged child abuse upon receiving information alleging abuse, beginning as early as 2004.

172.     As a direct and proximate result of the commission of these criminal acts, Plaintiff suffered significant injuries and damages.

173.     Plaintiff seeks, and Ohio Rev. Code §2307.60 authorizes, full damages in a civil action including but not limited to the costs of maintaining the action, attorney fees, and punitive damages.

## Count VII – Negligent, Reckless and Intentional Misconduct
### (All Defendants)

174.    Plaintiff incorporates his previous allegations as if fully rewritten herein.

175.    Paige Huck and Coach Huck, sexually groomed and, thereafter sexually abused Plaintiff, a minor in violation of Ohio Rev. Code §2907.03(A)(7).

176.    Defendants recklessly and intentionally disregarded complaints about the Hucks' behavior and actions toward Plaintiff and numerous other students.

177.    Defendants had independent duties to report any abuse allegations or suspicious conduct of the Hucks, pursuant to Ohio Rev. Code §2151.421 and other Ohio law.

178.    Defendants recklessly and intentionally breached their respective duties to report such sexual abuse of a student pursuant to Ohio Rev. Code §2151.421.

179.    Defendants joint and several actions constitute negligence per se and, therefore, are exempt from application of Ohio Rev. Code §2744, et seq., pursuant to Ohio Rev. Code §2744.02(B)(5).

180.    Defendants, through their agents and employees, recklessly and intentionally failed to report said sexual abuse of Plaintiff, by the Hucks, despite actual and/or constructive knowledge of the abuse.

181.    Defendants recklessly and intentionally failed to properly investigate complaints relating to the Hucks' abuse of students, including Plaintiff.

182.    Defendants acted in bad faith, and/or in a wanton or reckless manner with respect to complaints about the Hucks' abuse of students.

183.    Plaintiff's injuries and damages were a direct and proximate result of Defendants' respective negligence, wanton misconduct, and recklessness.

184.     As a direct and proximate result of the conduct, actions, failures to act, and inactions of the Defendants as described herein, Plaintiff sustained severe and permanent injuries, as set forth herein.

## Count VIII – Intentional Infliction of Emotional Distress
### (All Defendants)

185.     Plaintiff incorporates by reference each of the preceding paragraphs as if fully set forth herein.

186.     Defendants knew that repeated sexual abuse, harassment, and grooming of Plaintiff would be reasonably likely to cause severe emotional distress.

187.     Defendants reasonably knew that permitting Paige Huck to enter campus and engage with RVHS students would place such students in potentially abusive situations that would reasonably cause severe emotional distress.

188.     Coach Huck knew that facilitating overnight stays with his then-wife would place such students in potentially abusive situations that would reasonably cause severe emotional distress.

189.     Defendants failed to properly investigate and report following numerous prior complaints of inappropriate and sexual behavior involving Paige Huck and Coach Huck, which permitted students to be in a position that would reasonably cause severe emotional distress.

190.     Principal Edwards and Superintendent Meyers intentionally withheld information about Paige Huck's prior history of alleged sexual misconduct when the report to JFS was made on March 1, 2016 regarding the nude photograph she sent to Victim E.  Both also failed to report the allegations made by Plaintiff in July 2016.

191.     The egregious and perverse conduct by Paige Huck and Coach Huck, coupled with the indifferent response of Principal Edwards and Superintendent Meyers, was extreme,

outrageous, and beyond the bounds of human decency; such conduct should be considered intolerable in a civilized society.

192.     Defendants were the proximate cause of Plaintiff's mental and emotional injuries. Such injuries were of a nature that no reasonable person in Plaintiff's position should be expected to endure.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

1.     A jury trial for all issues pursuant to Fed.R.Civ.P. 38(b);

2.     That each Defendant be required to answer within the time prescribed by law;

3.     A declaration that the acts and conduct of all Defendants constitute violations of Plaintiff's constitutional, statutory, and common-law rights;

4.     An award to Plaintiff against all Defendants, jointly and severally, and an appropriate amount of compensatory and punitive damages;

5.     Equitable relief forcing Defendants to enact and follow policies to protect students in attendance from sexual abuse;

6.     An award to Plaintiff against all Defendants, jointly and severally, reimbursement for appropriate court costs and reasonable attorney fees;

7.     An award to Plaintiff for any other relief the court deems appropriate.

Respectfully submitted,

 *s/ Craig S. Tuttle*
Craig S. Tuttle (0086521)
John A. Markus (0093736)
LEESEBERG TUTTLE, L.P.A.
175 S. Third Street, Penthouse One
Columbus, Ohio 43215
Tel: 614/221.2223
Fax: 614/221.3106
Email: ctuttle@leeseberglaw.com
         jmarkus@leeseberglaw.com

 *s/ Mark A. Weiker*
Mark. A. Weiker (0086413)
ABDNOUR WEIKER, L.L.P.
262 S. Third Street
Columbus, Ohio 43215
Tel: 614/745.2001
Fax: 614/417.5081
Email: mark@education-rights.com

*Trial Attorneys for Plaintiffs*

## JURY DEMAND

Plaintiff hereby demands a trial by jury.


Respectfully submitted,

 *s/ Craig S. Tuttle*
Craig S. Tuttle